**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DYSON, INC. and <br> DYSON TECHNOLOGY LIMITED, <br><br> *Plaintiffs*, <br><br> v. <br><br> SHARKNINJA OPERATING LLC and <br> SHARKNINJA SALES COMPANY, <br><br> *Defendants*. | ) <br> ) <br> ) <br> ) <br> ) Case No. 1:14-cv-00779 <br> ) <br> ) Judge: Hon. John W. Darrah <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) |

**DYSON'S REPLY IN SUPPORT OF ITS MOTION (DKT. 157) TO STRIKE
(i) PORTIONS OF SHARKNINJA'S REPLY CLAIM CONSTRUCTION
BRIEF (DKT. 152), (ii) PORTIONS OF THE REBUTTAL EXPERT DECLARATION
OF ALAN BALL (DKT. 155), AND (iii) SHARKNINJA'S PROPOSED
CLAIM CONSTRUCTIONS IN THE JOINT RULE 4.2(F) STATEMENT (DKT. 156)**

Shark concedes that the claim constructions it proposed in its reply brief contain "additional words and pictures" over what it proposed in its Rule 4.1 disclosure and in its opening brief. Dkt. 163 at 2. It is actually much worse than that:

- Neither Shark nor its expert proffered 120-word written claim construction proposals until their claim construction reply submissions; and

- Neither Shark nor its expert proffered "fuzzy" drawings as a proposed claim construction until their claim construction reply submissions.

Dkt. 140; *see also* Dkt. 157 at 2-9. This is plain and undeniable on mere comparison of Shark's Rule 4.2(f) submission **with anything Shark had ever previously submitted**.

Shark nevertheless argues that its new constructions are merely an extension and explanation of its prior positions. *Id.* at 2, 4-9. Not true. If Shark's new constructions, and the new expert opinions on which they are based, were merely an extension or explanation of what Shark already proposed, then Shark would not need them. But Shark submitted a new expert

1

declaration and different content in its reply and Rule 4.2(f) submission, and now vigorously opposes striking those materials, precisely because they are a change of position from what Shark previously submitted. And Dyson has had no chance to rebut them. This is impermissible. *Civix-DDI, LLC v. Cellco P'ship*, No. 03 C 3792, 2005 WL 831307, at *6 (N.D. Ill. Apr. 6, 2005) (refusing to allow untimely proposed claim construction).

Shark makes no attempt to justify its new and untimely constructions. Instead, it repeatedly argues that Dyson "mischaracterized" its previous constructions as covering "nothing," Dkt. 163 at 3. *First*, that is not even true, as a review of Shark's cites demonstrates. The thrust of Dyson's responsive claim construction brief was that Shark could not prove any of the design elements it identified as performing "functions" are actually "dictated by function," according to the law of functionality, and as such the claims should be construed as the drawings themselves. Dkt. 144 at 7-17. On that point, Dyson accurately pointed out that Shark "simply asks the Court to construe the claims according to the drawings," and thus seemingly agreed with Dyson. Dkt. 144 at 8. In fact, that is precisely what Shark says over and over in its opening brief, that the claims should be construed as "the ornamental appearance…depicted in the drawings." Dkt. 140 at 13, 15, 18, 20, 22. Nowhere did Dyson say that Shark proposed a construction that covers "nothing."

*Second*, and regardless, nothing in Dyson's brief would justify Shark's addition of wholesale new constructions, as it has done. Shark's sharp change in position and its pursuit of a whole new approach on reply indicates that it recognized the truth of what Dyson said in its responsive brief—that at bottom, having conceded no element is "dictated by function," Shark's construction was no different than Dyson's construction. Shark's regret in its original position is not a justification for a new one on reply.

Because Shark admits that its constructions and supporting evidence are new, that leaves only the question of how to deal with Shark's conduct. Shark proposes leaving the playing field uneven and its late submissions unrebutted: Shark's new constructions stay in and Dyson is afforded neither discovery of them nor a chance to reply to them. *Id.* at 12. Shark's active opposition to remedying the prejudice caused by its improper tactics further justifies the Court's striking the materials from the record.

Dyson simply asks the Court to keep the playing field set as it was when the parties submitted their Rule 4.1 constructions to kick off the claim construction exercise that Shark itself requested.[1] This is the only way to ensure the parties have had a fair opportunity to present arguments regarding those proposals within the current schedule.

## I. ARGUMENT

### A. Shark Admits That It Offered New Proposed Constructions On Reply

Shark's opposition concedes that Shark put in new proposed constructions supported by new expert opinions for the first time in its reply brief. The first sentence of Shark's brief acknowledges that its claim construction reply, for the first time, "explained how SharkNinja's proposed approach to claim construction could and should be implemented by the Court." Dkt. 163 at 1. Elsewhere, Shark concedes that its reply "provided additional images and words" to its claim constructions. *Id.* at 2, 4 ("additional words and pictures"), 6, 9. Shark's exhibit

---

[1] This case is a textbook example of the need for a Rule 4.1 exchange. Dyson has always maintained that it needed to know Shark's proposed constructions in advance of the briefing to frame the dispute and because Shark's positions had shifted during the prior summary judgment proceedings. At Dyson's urging, the Court required a Rule 4.1 exchange of proposed claim constructions in advance of the briefs. Dkt. 157-3 (11/24/2015 Hearing Tr.) at 3-4. By changing constructions mid-briefing, Shark deprived Dyson of a fair opportunity to address its revised claim constructions.

(Dkt. 163-1) shows side-by-side the differences between what it disclosed to Dyson in its Rule 4.1 statement and in its opening brief, with what it offered in its reply brief.

Moreover, Shark acknowledges that its opening expert declaration merely opined that "certain elements of Dyson's design are functional," Dkt. 163 at 6, but that its "rebuttal" expert declaration "provided a visual approach to help the Court parse those underlying functional elements from the ornamental aspects," *id.* at 10. It is that "visual approach" that is brand new, a point Shark does not dispute. It had to be because Shark's proffered expert, Alan Ball, admitted in his deposition that his opening declaration does not "give a specific recipe on how the judge might instruct the finder of fact on" functionality. Dkt. 157-5 (1/6/16 Ball Dep. Tr.) at 108:21-109:21. Mr. Ball's verbal description of the claims is also brand new; again, in his deposition Mr. Ball stated, "I haven't attempted to reduce [the claimed design] to words." *Id.* at 26:1-11. Shark does not dispute these points. And Shark does not address how it would be proper to backfill the opinions its expert never gave for the first time on reply.

### B. Shark's New Constructions Raise New Legal And Factual Issues That Dyson Has Never Had The Opportunity To Address

Shark's attempts to downplay the significance of offering new constructions for the first time in reply are without merit. Shark first asserts that its new constructions are simply an extension of the arguments it had made in its opening. Dkt. 163 at 2, 4-9. Shark also suggests that shifting its constructions mid-briefing and when the opposing side has no chance to respond is somehow a common or acceptable approach in patent cases. *Id.* at 2. Shark is incorrect on both counts.

In a design patent case such as this, narrative constructions are fundamentally different from the pictorial constructions Shark had disclosed at each step in the claim construction process prior to its reply. As the *en banc* Federal Circuit cautioned in *Egyptian Goddess*, "Given

4

the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc). The Federal Circuit has since reaffirmed that deviations from the preferable course are hardly ever unjustified: "this court has cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case. . . . In many cases, the considerable effort in fashioning a detailed verbal description does not contribute enough to the infringement analysis to justify the endeavor." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). Unlike utility patents, "[d]esign patents are typically claimed as shown in drawings, and claim construction *must* be adapted to a pictorial setting." *Id.* (emphasis added) (citing *Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F.3d 1370, 1377 (Fed. Cir. 2002) (construing a design patent claim as meaning "a tray of a certain design as shown in Figures 1-3")). Thus, adding new half-page-long verbal constructions on reply in lieu of the pictorial constructions Shark had offered previously necessarily changes the issues those constructions raise. This is the case for several reasons.

*First*, construing Dyson's design patent claims to include the "additional words" in Shark's new narrative proposed constructions—as opposed to factoring out any elements that actually are functional (*i.e.*, *purely* dictated by function) from the patents' figures—runs the significant risk of describing the asserted designs improperly and confusing the jury. *Egyptian Goddess* made clear that "***a design is better represented by an illustration than it could be by any description and a description would probably not be intelligible without the illustration***." *Egyptian Goddess*, 543 F.3d at 679 (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886))

5

(emphasis added, internal quotation omitted). "As a rule, the illustration in the drawing views is its own best description." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (quoting *Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006)); *Egyptian Goddess*, 543 F.3d at 679 (same). Shark's addition of words to its constructions such as "pistol grip," "point-and-shoot layout," and "the power tool, dumbbell layout," among others, do not adequately capture the drawings claimed in the patents, and place undue emphasis on isolated elements to the exclusion of the overall claimed design as a whole. *Egyptian Goddess*, 543 F.3d at 679. Even more significant, Shark's new constructions are so one-sided and biased in Shark's favor, they would improperly suggest to the jury the result it should reach. *Baxter Int'l, Inc., v. McGaw, Inc.*, No. 95 C 2723, 1996 WL 99717 at *3 (N.D. Ill. Mar. 4, 1996) (rejecting jury instructions for infringement that were "self-serving and argumentative"). All of these improper verbal descriptions are new to Shark's proposed constructions, as Shark previously described the matter it sought to exclude only pictorially.[2]

*Second*, Shark's new reply constructions take an entirely different position regarding functionality than what Shark argued at the outset of claim construction briefing. In its opening brief, Shark did not argue that *any* element of Dyson's asserted designs met the legal requirement for functionality, as Shark did not (and could not) show that any element was "purely functional" or "dictated by function." Dkt. 140. Instead, Shark merely asked the Court to think about "functional purposes" and "functional considerations" of the asserted designs—which is insufficient to impact the Court's ultimate construction since it is undisputed that no element is

---

[2] Shark's reliance on *Richardson* is misplaced (Dkt. 163 at 11), since *Richardson* only factored out *purely* functional elements of the claimed design. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010). As set forth in Dyson's Responsive Claim Construction brief, Shark and its expert admit that none of the allegedly "functional" features satisfies the *purely* functional standard.

6

purely functional or dictated by function. *Id.* at 1, 3-6. Yet, in its reply constructions, Shark apparently asks for "fuzzy" versions of multiple elements of the asserted designs to be factored out as functional, such as the "pistol grip," "upright cylinder," "long cylindrical suction tube," and "low-profile floor unit." Dkt. 152 at 12-13. Each reflects a new argument that Shark did not make in its opening claim construction brief. Shark's approach—factoring out "fuzzy" drawings that are not even claimed—has no support in the law or in common sense. Shark's "fuzzy" drawings are really a backdoor attempt to somehow exclude the general configuration from Dyson's patents when the jury analyzes infringement, despite the evidence establishing that the configuration itself was a result of ornamental design choices to achieve a unique appearance.[3] The Supreme Court has unequivocally stated that design patents can cover "the configuration of any article of manufacture," *Gorham Mfg. Co. v. White*, 81 U.S. 511, 523 (1871), particularly where, as here, the configuration itself is ornamental and not purely functional.

*Third*, Shark's new narrative constructions explicitly direct the factfinder to consider certain elements in the asserted designs as "most significant." *Id.* Yet this is exactly the type of focus on individual elements that *Egyptian Goddess* forecloses: in admonishing district courts *against* adopting verbal constructions like Shark's, the *en banc* Federal Circuit explained that such narrative constructions create "the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Egyptian Goddess*, 543 F.3d at 679-80. The proper point of comparison in the infringement analysis is the *overall* design, not the certain

---

[3] Dyson's opposition brief recognized that the true (though not openly stated) purpose of Shark's claim construction was to limit its claimed drawings to only the "particular" claimed design, "including every claimed detail," in an attempt to re-litigate summary judgment for a third time and to ultimately take the question of whether an ordinary observer would find substantial similarity away from the jury. Dkt. 144 at 1-2.

specific elements on which Shark wishes to focus. *Id.*; *see id.* at 677; *Crocs*, 598 F.2d at 1302-3 (reversing narrative construction that distracted attention from design as a whole, and adopting pictorial construction based on patent figures).

*Finally*, Shark's assertion that it is a common and accepted approach in patent cases to offer different constructions on reply is flat wrong. Courts repeatedly prohibit such a "shifting sands" approach to claim construction. *Civix-DDI, LLC v. Cellco P'ship*, No. 03 C 3792, 2005 WL 831307, at *6 (N.D. Ill. Apr. 6, 2005) (refusing to allow untimely proposed claim construction); *see LG Elecs., Inc., v. Q-Lity Comp. Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (court's patent rules are "designed to prevent the 'shifting sands' approach to claim construction"); *IP Innovation LLC v. Vizio, Inc.*, No. 08 C 393, 2010 WL 245557, at *2 (N.D. Ill. Jan. 13, 2010) (foreclosing new claim construction arguments raised for the first time on reply).

At bottom, Shark's reply claim construction brief is actually its (improper) fourth attempt at summary judgment of noninfringement. The Court already denied Shark's motion for summary judgment of noninfringement (#1) and Shark's motion for reconsideration (#2). As Dyson noted, Shark's legally defunct approach to "functionality" in its opening claim construction brief (#3) was nothing more than another disguised effort to ask the Court for a noninfringement ruling. Dkt. 144 at 2. And now Shark's untimely submissions make another try (#4): Shark's lengthy written proposals are loaded and argumentative so as to eventually ask the Court to change its mind, or at the very least improperly influence the jury on the question of infringement.

### C. Shark's Active Opposition To Discovery On Its New Claim Constructions Increases The Prejudice To Dyson

Shark does not dispute that the claim constructions it presented to the Court in its reply brief are new. And it does not dispute that the support for its new constructions comes solely

from the new expert opinions of its expert, Mr. Ball, which Mr. Ball admitted he had never even formed, let alone offered, in his first, timely claim construction declaration. Under such circumstances, this Court has recognized that there are two available remedies: invoking the waiver doctrine, or providing Dyson with an opportunity to fully and fairly address the new arguments and expert evidence. *Sommerfield v. City of Chicago*, No. 06 C 3132, 2012 WL 3779104 at *2 (N.D. Ill. Aug. 31, 2012) (citing *Beaird v. Seagate Tech.*, 145 F.3d 1159 (10th Cir. 1998); *Commonwealth Edison Co. v. U.S. Nuclear Regulatory Comm'n*, 830 F.2d 610, 621 (7th Cir. 1987); *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002)). In its opening brief, Dyson asserted that the proper remedy here is waiver. Dkt. 157 at 14-15.

Shark's opposition brief confirms that waiver is the only option, as Shark actively opposes allowing Dyson a sur-reply brief. Dkt. 163 at 12. Shark also actively opposes discovery on the brand new expert opinions that it offered for the first time in reply. *Id.* at 12 & n.4.[4] That is, Shark seeks to have its new proposed claim constructions and its new expert opinions supporting it left unaddressed and unrebutted. The law does not allow that. In this Court's words, Shark's "one-sided presentation" is "hopelessly inconsistent with the very premise on which the adversary system is based." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D. Ill. 2006). Not only is it "unfair to [Dyson]," but it also

---

[4] Shark states that another deposition of Mr. Ball is "unnecessary and harassing." Dkt. 163 at 12 & n.4. Yet the Local Patent Rules expressly require that when "a party offers the testimony of a witness to support its claim construction," it must "promptly make the witness available for deposition concerning the proposed testimony." LPR 4.2(a) & (c). Shark should not be allowed to insulate its expert from cross examination of his opinions by holding back some of them until reply.

"adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides." *Id.*[5]

Shark asserts that Dyson will be able to to address the new construction and new expert opinions at the *Markman* hearing, scheduled for March 2, 2016. That does not remove the prejudice. Dyson's entire submission to this point, including all of its arguments and evidence, address the claim constructions that Shark proposed in its Rule 4.1 disclosure and in its opening brief. Dyson deposed Shark's expert on those proposed constructions as well. Thus, although Dyson can address the legal shortcomings of Shark's new construction at the hearing, it cannot expose the flaws in Shark's new expert opinions through deposition or provide its own evidence to the contrary. Moreover, Dyson should not be forced to divide its limited time before the Court during the *Markman* hearing to argue against Shark's multiple (and late) claim construction positions.[6]

Finally, Shark argues that striking its new materials is a "drastic" remedy. But that is inconsistent with the rest of Shark's opposition brief, which contends that the new materials are simply an extension of what it has already said. Dkt. 163 at 2, 4-9. Again, Shark cannot have it both ways. If Shark's new materials are truly a mere extension of its prior position, then it is not "drastic" at all to strike them from the record because the Court already has Shark's opening

---

[5] Even if Dyson were permitted another deposition of Mr. Ball, it should be awarded its fees and costs for doing so. As discussed, Mr. Ball had not even formed the new opinions that he offers in reply when Dyson took his deposition on claim construction. It is Shark, not Dyson, that is responsible for the unnecessary and wasteful duplication of discovery efforts, and it should bear the cost.

[6] Shark states that "Dyson insisted on having a full 75 minutes per party to argue claim construction," and that "SharkNinja suggested far less time." Dkt. 163 at 13. But of course the parties *jointly* proposed to the Court that each side receive 75 minutes. Dkt. 156 at 4. And before reaching that compromise, SharkNinja proposed 60 minutes, hardly "far less time" than the agreed-upon 75 minutes.

10

positions. In any event, Shark's change in position was its own doing. No change in the law or facts caused it, and Shark does not contend otherwise.

## II. CONCLUSION

For the reasons above and in its opening brief, Dyson's motion to strike should be granted.

February 8, 2016  Respectfully Submitted,

By: */s/ Bryan S. Hales*
Bryan S. Hales, P.C. (IL Bar No. 6243060)
bhales@kirkland.com
Dennis J. Abdelnour (IL Bar No. 6292242)
dabdelnour@kirkland.com
Ian J. Block (IL Bar No. 6299117)
ian.block@kirkland.com
Jay J. Emerick (IL Bar No. 6312746)
jay.emerick@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
glocascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Plaintiffs Dyson, Inc.*
*and Dyson Technology Limited*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 8th day of February, 2016, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

                      /s/Bryan S. Hales