**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DYSON, INC. and DYSON TECHNICAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | 1:14-cv-0779 |
| v. | ) ) ) | |
| | ) | Magistrate Judge Susan E. Cox |
| SHARKNINJA OPERATING LLC and SHARKNINJA SALES COMPANY | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

For the reasons more fully discussed below, the Motion to Compel [173] filed by

Defendants SharkNinja Operating LLC and SharkNinja Sales Company (collectively,

"Defendants") is granted in part, and denied in part. The motion is granted as to James Dyson's

emails that are relevant to issues of investorship and claim construction, denied as to James

Dyson's emails relevant to the issue of infringement, and denied as moot on all other issues.

### I.      Background

For the purposes of the instant motion, the Court assumes familiarity with the background

facts in this suit, which were covered in Judge Darrah's Memorandum Opinion and Order

denying Defendants' Motion for Summary Judgment of Noninfringement entered on September

2, 2015.  (Dkt. 125.)  Defendant filed the instant motion to compel, seeking a wide array of

discovery.  Following a hearing on that motion before this Court, and a court-ordered face-to-

face meet and confer, the outstanding issues have been whittled down to one: whether this Court

should order Plaintiffs Dyson, Inc. and Dyson Technology Limited (collectively, "Plaintiffs") to

produce emails belonging to James Dyson ("Dyson"), who is Plaintiffs' "global leader" and one of the named inventors on the patents that form the basis for this suit. Plaintiffs have agreed to produce Dyson's emails that are relevant to the issue of "inventorship," but have refused to produce documents relating to the other issues that Defendants claims are relevant, such as claim construction or infringement. Plaintiffs contend that they need not produce any such emails because the "apex doctrine" requires that the Defendants show that they could not obtain such evidence from other sources before obtaining them from high-ranking corporate officials, such as Dyson. Although they do not explicitly put forth the argument in their brief in opposition, Plaintiffs suggest that discovery on the issues of infringement and claims construction would be untimely because infringement was the subject of a bifurcated discovery schedule and summary judgment motion, and there has already been a Markman Hearing on claim construction. The Court will address these issues below.

## II.        Discussion

### A.        Apex Doctrine

Plaintiffs' formulation of the so-called apex doctrine is incorrect, and this Court does not believe that it would shield Dyson from producing relevant emails sought by Defendants. According to Plaintiffs, "a party seeking discovery of a high-ranking senior executive must first demonstrate that the individual has personal knowledge, and that the requested information is truly 'unique,' *i.e.*, not available from alternative, less-intrusive, sources." (Dkt. 191 at 4.) Plaintiffs contention that Defendants bear the burden of proving that their discovery is appropriate misstates and inverts the burden of proof in this case. "The burden under the apex principle is supplied by the general rule to a party that seeks to avoid discovery in general" bears the burden of "showing that good cause exists to prevent" the discovery. *Powertech Tech., Inc.*

*v. Tessera, Inc.*, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013) (internal quotations omitted). This makes sense, as the logical underpinnings of the apex doctrine seeks to prevent a high-ranking corporate executive from being run through the wringer of civil discovery, when they do not have personal knowledge of the relevant facts; in other words, to protect apex employees "from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).[1] Thus, in applying the apex doctrine, this Court is required to analyze what harm Plaintiffs would suffer if ordered to produce the requested discovery. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012). As such, the apex doctrine, despite Plaintiffs' assertions, "is not an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." 8A Charles Alan Wright, Arther R. Miller, and Richard L. Marcus, *Federal Practice and Procedure*, § 2036 n.7 (3d ed. 2010). Instead, "[a]s with any other protective order, the court should look for guidance to a balance of the likelihood of oppression or harassment compared to the value of the inquiry in generating important information." *Id.*

The Court does not believe that Plaintiffs have carried their burden to demonstrate that good cause exists to limit discovery in order to protect Dyson from oppression, undue burden, or expense. First, there is some doubt whether the apex doctrine even applies to document production, as all of the cases this Court reviewed on the issue were concerned with preventing depositions of high ranking corporate officials. Even assuming that the doctrine applies, the burden on Dyson for having to produce relevant emails is low, and Plaintiffs have not articulated any reason why this email production would constitute an undue burden.

Second, there is no doubt that Dyson's possesses relevant information to issues that are

---

[1] This is precisely why most of the cases that Plaintiffs cite in their brief in opposition involve a party seeking to assert the apex doctrine by taking the affirmative step of moving for a protective order. Notably, the Plaintiffs here did not move for a protective order.

still the proper subject of discovery.[2]  Dyson is the named inventor on the patents in this case, and several notebooks produced in this case contain Dyson's drawings, which suggest that he had a hands-on role in the development of the products in this suit.  Moreover, Plaintiffs have already agreed to produce Dyson's emails that are relevant to the issue of inventorship, thereby implicitly conceding that Dyson's emails do, in fact, contain relevant information on some of the remaining issues in this case.

Finally, the Court does not believe that requiring Dyson to actively engage in the discovery process will lead oppression or harassment from Defendants.  This is not a case where one party is engaging in vexatious discovery tactics by seeking the deposition of an executive far removed from the facts of the case.  Dyson is the owner and "global leader" of the Plaintiffs, and Plaintiffs have chosen to file suit in this district to protect their rights under United States patents on which Dyson is the named inventor. Also, judging by some of the discovery already produced by Dyson in this case, he appears to have taken a hands-on role in designing and reducing to practice the products at issue.  It is not oppressive, harassing, annoying, embarrassing, nor unduly burdensome to require him to produce his emails.  In fact, this Court believes that such documents would be of great value to Defendants in properly defending this case at trial and in any future dispositive motions.  Therefore, the Plaintiffs are ordered to produce Dyson's emails relevant to the issues discussed below.

### B.  Timeliness of Discovery

As noted above, this case has moved forward under a bifurcated discovery schedule. Discovery related to infringement was ordered closed on January 30, 2015, and a motion for summary judgment was presented to Judge Darrah on that discrete issue.  (Dkt. 51, 65.)  Judge Darrah denied that motion, and then entered an order closing the remaining fact discovery on

---

[2] A discussion of what subjects are proper discovery matters can be found *infra* at Section II.B.

May 12, 2016. (Dkt. 125, 136.) Defendants claim that the emails they seek from Dyson are relevant to issues of infringement, claim construction, and inventorship.

This Court finds that relevance to infringement is not a proper reason to compel production. Discovery on infringement ended over a year ago, and a dispositive motion has been filed, briefed, and decided on that issue. Defendants have not moved to reopen discovery on that issue, and, even if they did, this Court's referral does not include the power to extend discovery deadlines. (Dkt. 184.)

However, this Court does find that relevance on the other issues raised by Defendants is sufficient to order production; discovery is still ongoing on all relevant issues other than infringement. Although the Court is aware that a Markman Hearing has already taken place, that does not necessarily close discovery on claim construction or make such discovery irrelevant. For example, it is possible, albeit unlikely, that Defendants could discover information that would lead them to petition the district judge to re-open the Markman Hearing, or file additional materials in support of the positions Defendants asserted at that hearing. At this point, the Court cannot say that Defendants should be precluded from receiving any materials relevant to claim construction that might be in Dyson's emails while the discovery period is still open. On the issue of inventorship, Plaintiffs have agreed to produce emails relating to that issue, making that portion of the motion moot. Finally, in ordering Plaintiffs to produce the relevant emails, the Court echoes Judge Darrah's statement to the parties at a hearing almost eighteen months ago "to err on the side of producing everything that's arguably relevant," (Tr. of Sept. 30, 2015, at 3:19-20), and urges the parties to work cooperatively and expediently to produce Dyson's emails in advance of the discovery deadline.

### C.     Motion to Compel Deposition of James Dyson

Defendant's Motion to Compel Dyson to Produce James Dyson for Deposition (Dkt. 198) is also currently pending before this Court. In a previous order, this Court held that it would be premature to rule on that motion until the Court ruled motion to compel Dyson's emails. Given this Court's discussion above regarding the balance between the relevance of the discovery that can be obtained from Dyson and the relative burden, the Court orders that Plaintiffs file their brief in opposition to that motion on or before April 28, 2016, explaining why Dyson's deposition should not be compelled in this case.

## CONCLUSION

For the reasons more fully discussed above, Defendants' Motion to Compel [173] is granted in part and denied in part.

**ENTERED:**

**DATED:** April 22, 2016

_____
Susan E. Cox
United States Magistrate Judge