UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DYSON, INC. and DYSON TECHNOLOGY LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | 1:14-cv-0779 |
| v. | ) ) ) | |
| | ) | Magistrate Judge Susan E. Cox |
| SHARKNINJA OPERATING LLC and SHARKNINJA SALES COMPANY | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

For the reasons more fully discussed below, the Motion for Letters of Request [235] filed by Defendants SharkNinja Operating LLC and SharkNinja Sales Company (collectively, "Shark") is granted in part and denied in part.

**I. Background**

This case involves a design patent infringement suit initiated by Plaintiffs Dyson, Inc. and Dyson Technology Limited (collectively, "Dyson") for three design patents held by Dyson.[1] The patents-in-suit are U.S. Design Patent Nos. D577,163 (the "'163 patent"), D668,010 (the "'010 patent"), and D668,823 (the "'823 patent"). The '163 patent lists the following named inventors: Peter Gammack, Michael Peace, William White, William Milne, Richard Hickmott, and James Dyson. In its Final Infringement Contentions of November 26, 2014, Dyson asserted that the priority date for the '163 patent was July 19, 2006; in a supplemental interrogatory

---

[1] For the purposes of the instant motion, the Court assumes familiarity with the background facts in this suit, which were covered in several opinions issued by this Court and Judge Darrah, including Judge Darrah's Memorandum Opinion and Order denying Defendants' Motion for Summary Judgment of Noninfringement entered on September 2, 2015 (Dkt. 125), and this Court Orders of April 22, 2016 (Dkt. 210), June 6, 2016 (Dkt. 227), and September 28, 2016 (Dkt. 278).

1

response served in March 2016, Dyson amended its priority date for the '163 patent to May 5, 2005. Mssrs. Gammack, Milne, and Dyson have already sat for depositions in this case. Their deposition testimony stated that the design patents relevant to this suit resulted from a collaborative process, and they could not remember which portions of the design could be attributed to which named inventor. Mssrs. Peace, White, and Hickmott have not been deposed; these individuals are no longer employees of Dyson and reside in Singapore, the United Kingdom, and Denmark, respectively. Mssrs. Peace, White, and Hickmott are all represented by counsel for Dyson, who has indicated that these individuals are refusing to appear for a deposition voluntarily. None of these individuals is listed as an inventor on the '010 or '823 patents.

Accordingly, Shark filed the instant motion seeking the Court to issue Letters of Request and submit them to the "Competent Authorities of the United Kingdom, Singapore, and Denmark, pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters."[2] (Dkt. 235-1 at 1.) Shark has appended three proposed Letters for Request (also known as Letters Rogatory) to its motion that are virtually identical, including an exhibit describing the testimony sought from Mssrs. Peace, White, and Hickmott. The topics for examination listed in the exhibit are: 1) "Matters relating to the patents-in-suit" (*i.e.*, circumstances surrounding the conception and development of the '163

---

[2] Judge Darrah referred the instant motion to this Court on September 9, 2016. (Dkt. 265.) This Court believes that it has jurisdiction to enter an order on the instant motion. United States Courts have two main roles with respect to Letters for Request. First, they may issue letters to a designated authority in another Hague Convention nation "who will execute the Letter by taking evidence in the second state." *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503, 508 (N.D. Ill. 1984); *see also*, 28 U.S.C. § 1781. Second, "a party to a litigation before a foreign tribunal may apply to a U.S. District Court for assistance in obtaining discovery." 12 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure* § 3068.2 (3d Ed. 2014); *see also*, 28 U.S.C. § 1782. In the second role, "[t]he sole purpose of the proceeding is to obtain discovery, and accordingly a motion to compel such discovery is a final, dispositive matter" that is outside the power of a United States Magistrate Judge to enter. *See id.* However, in the first role, the Letters Rogatory at issue are not the sole purpose of the proceeding, and the motion is not dispositive, thereby falling within a United States Magistrate Judge's powers of discovery management. Because the instant motion calls for the Court to act in the first role described above, the Court has jurisdiction to enter this order.

patent, the '823 patent, and the '010 patent, the roles played by the named inventors and other Dyson employees in that conception and development, and "[k]nowledge and understanding of the state of the art of the fields of handheld and stick vacuum cleaner design"); 2) "Matters relating to Dyson" (*i.e.*, descriptions of the deponent's job duties, employment agreements with Dyson, and information regarding Dyson's designs for vacuum cleaners); and 3) "Matters relating to this Lawsuit" (*i.e.*, the deponent's knowledge of the factual basis for Dyson's infringement claims, and discussions the deponent had about the lawsuit with Dyson or any other person).

## II. Discussion

Dyson argues that Shark has failed to demonstrate that the additional depositions it seeks will lead to any new, non-cumulative information, because the testimony to date has described a collective contribution, and Mssrs. Peace, White, and Hickmott are like to provide similar testimony. Alternatively, Dyson argues that the scope of the Letters Rogatory should be limited. For the reasons discussed more fully below, the Court finds that the Letters Rogatory should be issued, but that the testimony topics should be limited.

The Hague Convention procedures are available "whenever they will facilitate the gathering of evidence by the means authorized by the Convention," including Letters Rogatory issued by United States District Courts and submitted to the foreign judicial authority of other signatory nations. *See Societe National Industrielle Aeropatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 540 (1987). "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Id.* at 546. Therefore, "[w]hen it is necessary to seek evidence abroad, however, the

district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Id.* American courts should also pay attention to issues of comity and "take care to demonstrate due respect for any special problem confronted by the foreign litigant on accout of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id.* "In performing a comity analysis, a court should consider: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance would undermine important interests of the state where the information is located." *Seoul Semiconductor Co. Ltd. v. Nichia Corp.*, 590 F. Supp. 2d 832, 835 (E.D. Tex. 2008).

These factors weigh in favor of issuing the Letters Rogatory. The Court finds that the testimony that Shark seeks is crucial. Issues related to inventorship, conception, and reduction to practice are central to the validity of the patents Dyson seeks to enforce; if any of the six named co-inventors on the '163 was improperly named, or if any other Dyson employee who should have been named as a co-inventor was omitted from the '163 patent, that fact would render the patent invalid. *See Pannua v. Iolab Corp.*, 155 F.3d 1344, 1349 (7th Cir. 1998). Issues related to inventorship are made all the more important by Dyson's alteration of the priority date for the '163 patent at a relatively late stage in this litigation, which calls into question issues relating the conception of the relevant designs. Dyson has injected additional controversy into these issues through its own discovery tactics. Shark should not be forced to sit idly by while Dyson is permitted to alter fundamental positions in its infringement suit.

Furthermore, this Court is not persuaded by Dyson's argument that the testimony is likely

to be cumulative because three other co-inventors have testified consistently. The Court can think of very few individuals who are likely to possess relevant information on topics related to inventorship, conception, and reduction to practice as the named co-inventors of the '163 patent. There is no guarantee that the remaining co-inventors will have the same memory of the invention process, and Shark should not have to take Dyson's word for it. Shark should be permitted to test Dyson's claims that the testimony will be cumulative, and see if any of the relevant individuals have sharper memories regarding the process that led to the vacuum designs relevant to this case. This factor cuts in Shark's favor.

The Court also does not believe that there are alternative means of obtaining this information that would be equivalent to a live deposition of Mssrs. Peace, White, and Hickmott. As noted above, only those individuals are capable of providing their account of the invention process and their contributions to the designs embodied in the '163 patent. Although the testimony could be presented by affidavit, the Court does not believe that an affidavit in this instance would be an adequate substitute for the information that Shark's counsel may elicit through live testimony. The deponents' recollections may be refreshed by laboratory notebooks or other documents shown to them, and live cross-examination may provide information that would not come out on paper.[3] This factor also cuts in favor of issuing the Letters Rogatory.

Finally, non-compliance with the discovery request would undermine the United States'

---

[3] This case is distinguishable from *Seoul Semiconductor Co. Ltd. v. Nichia Corp.*, 590 F. Supp. 2d 832 (E.D. Tex. 2008), cited by Dyson to show that the testimony Shark seeks is likely to be cumulative. That case sought a letter rogatory for testimony and documents from one of the attorneys who prosecuted the relevant patent; however, the court did not issue the letter rogatory, and ruled that the discovery would be duplicative of the information obtained from the lead prosecuting attorney, who was also going to be deposed. The issue relevant to the discovery in *Seoul Semiconductor* was inequitable conduct, whereas the relevant issue here is inventorship. In *Seoul Semiconductor*, each specific prosecuting attorney's role in the patent prosecution was not necessary to prove (or disprove) inequitable conduct. Conversely, in this case, each named co-inventor must have contributed in some significant manner to the conception of the invention. *Fina Oil and Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). As such, each and every named inventor's testimony regarding their role in the conception of the relevant designs is crucial to determining whether the appropriate inventors are listed on the patent.

5

interests in ensuring that patent suits are fully and fairly litigated. As another Court in this district once noted, "inadequate discovery frustrates the purposes of the patent laws and the Constitution." *Graco*, 101 F.R.D. at 513. Moreover, Dyson has provided no indication that compliance with the Letters Rogatory would undermine the interests of Singapore, Denmark, or the United Kingdom. As such, the Court finds that this factor also supports issuing the Letters Rogatory.

The remaining factors are either neutral or weigh against issuing the Letters Rogatory. Although the requests state with specificity the information they seek, the coverage of the requests is extremely broad. That factor is, at best, neutral. Finally, the information did not originate in the United States, and this factor weighs against issuing the Letters Rogatory. However, the Court finds that the balance of these factors weighs in favor of issuing the Letters Rogatory. As such, the Court holds that the Letters Rogatory should be issued.

Nonetheless, the Court must be careful to ensure that unnecessary, or unduly burdensome, discovery is not sought from the deponents. In making that determination, the Court should weigh the likelihood that these witnesses have relevant information with the burden of testifying regarding those topics. With that in mind, the Court does not believe that topics listed under the "Matters relating to this Lawsuit" are likely to lead to new, relevant information. None of the proposed deponents currently work for Dyson; two of them (White and Hickmott) left years before Shark's allegedly infringing product was released, and all of them left before the lawsuit was filed in 2014. The Court does not believe that the "Matters relating to this Lawsuit" are appropriate topics for the Letters Rogatory.

Similarly, the "Matters relating to Dyson" topics are overly broad and likely cumulative of the information that Shark can obtain from other sources. First, the deponents' job duties and

6

responsibilities, or their employment agreements with Dyson are not likely to lead to any information relevant to whether Shark's designs infringe the patents in this suit. As for information regarding Dyson's vacuum designs, there is no reason to believe that these individuals have any unique insight into such a sweeping topic. There are many other witnesses, including many of the witnesses that Shark has already deposed, who can provide this information without resorting the discovery procedures provided by the Hague Convention. As such, the Letters Rogatory should not include these topics either.

Finally, the Court believes that the "Matters relating to the patents-in-suit" topics may lead to relevant information, but are too broadly drafted. These topics refer to the "Claimed Designs," which are defined as "the designs claimed in the patents-in-suit;" in other words, these topics seek testimony regarding the '163 patent, the '823 patent, and the '010 patent. As noted above, the deponents are the named inventors on the '163 patent only. They are very likely to have relevant information regarding the conception and development of the design embodied in that patent, but much less likely to have relevant information about those issues for the other patents. As such, their testimony should be limited to the '163 patent. It is appropriate for this Court to issue Letters Rogatory on the topics listed under "Matters relating to the patents-in-suit," provided that they are limited to the '163 patent.

## CONCLUSION

Shark's Motion for Letters of Request [235] is granted in part and denied in part. Shark should submit new proposed Letters Rogatory consistent with this opinion.

**ENTERED:**

**DATED:** September 30, 2016

Susan E. Cox
United States Magistrate Judge