UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DYSON, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 14-cv-779 |
| | ) | |
| SHARKNINJA OPERATING LLC, | ) | Judge John W. Darrah |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 28, 2016, Magistrate Judge Cox granted Defendants' Motion to Compel in

part, finding that Plaintiffs had waived attorney-client privilege over the issue of inventorship for

communications between February 1, 2016, and April 11, 2016.   Plaintiffs filed Objections to

Magistrate Judge's September 28, 2016 Order Finding Waiver of Privilege [288].

## BACKGROUND

Plaintiffs Dyson, Inc. and Dyson Technology Limited (collectively, "Dyson") filed a

Second Amended Complaint against Defendants SharkNinja Operating LLC and

SharkNinja Sales Company (collectively, the "Defendants"), alleging three counts of design

infringement associated with United States Design Patents No. D577,163  (the "'163 Patent"),

No. D668,010 (the "'010 Patent"), and No. D668,823 (the "'823 Patent").

Dyson "filed paperwork to correct the inventorship" of two of the design patents at issue

in this suit (the "'010 and '823 Patents").  (Dkt. 241, p. 3.)  Dyson previously alleged that the

'010 and '823 Patents had a foreign priority date of August 27, 2010, and listed the inventors as

Timothy Stickney, James Dyson, and Peter Gammack.  (*Id.* pps. 2-3.)  On March 31, 2016, in

response to Defendants' interrogatories, Dyson claimed that the '010 and '823 Patents had a

priority date of March 6, 2006.  (Dkt. 244, p. 4.)  Defendants argue these changes are intended to avoid prior art that would render the patents invalid.  (*Id.* at 2.)  Dyson asserts that these changes resulted from information gleaned from notebooks and sketches reviewed during the course of discovery.  (Dkt. 241, p. 7.)

On April 25, 2016, Dyson filed two Requests to Correct Inventorship Under 37 C.F.R. § 1.324 with the United States Patent and Trademark Office ("USPTO") that sought to remove Timothy Stickney as a named inventor on the '010 and '823 Patents.  (Dkt. 244, Exs. 6-7.)  Both of these requests included statements from Stickney, Gammack, and James Dyson, which read: "I agree to the change of inventorship to delete [Mr. Stickney] as an inventor."  (*Id.*) At his deposition, James Dyson testified that he was asked to sign these statements by his attorneys, and that the reason for the change in inventorship was "probably" explained to him by his attorneys before he signed the statement.  (Dkt. 244, Ex. 8 at 90:10-91:5.)

Defendants submitted interrogatories to Dyson.  Interrogatory 17 sought information regarding the decision to remove Stickney as a named inventor on the '010 and '823 Patents. The interrogatory sought certain information regarding "each and every determination by Dyson of who does or does not qualify as a proper inventor" of the patents in the suit:  "(a) the specific date of each such determination; (b) the complete factual and legal basis for each such determination; (c) each individual involved in making each such determination . . . ; (d) all documents considered in making or otherwise relating to each such determination; and (e) all communications relating to each such determination."  (Dkt. 244, Ex. 5.)  Dyson objected to the interrogatory on the bases of attorney-client privilege and the work product doctrine and responded that "around February and March 2016, Dyson's investigation

during discovery in this case revealed that the invention claimed in the '010 and '823 patents was conceived and reduced to practice before Tim Stickney was involved and that he was incorrectly included as an inventor." (*Id.*)

Magistrate Judge Cox, in a well-reasoned opinion, found that Dyson waived attorney-client privilege over the issue of inventorship for communications between February 1, 2016, and April 11, 2016, and ordered Dyson to respond fully to Defendants' interrogatory.

## LEGAL STANDARD

This issue is governed by Federal Rule of Civil Procedure 72(a), which provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus., Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). To prevail on their objections, Defendants must show that Magistrate Judge Cox's order was clearly erroneous or contrary to law. *See Makowski v. Smith Amundsen LLC*, No. 08-CV-6912, 2012 WL 3643909, at *1 (N.D. Ill. Aug. 21, 2012).

## ANALYSIS

Plaintiffs object to Magistrate Judge Cox's September 28, 2016 ruling that attorney-client privilege had been waived for communications regarding the issue of inventorship between February 1, 2016, and April 11, 2016.

3

Magistrate Judge Cox, in a well-reasoned opinion, relied on a Federal Circuit ruling in finding that Dyson waived attorney privilege: *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1375 (Fed. Cir.), opinion corrected, 275 F.3d 1344 (Fed. Cir. 2001). In *Winbond*, the patent owner filed a complaint with the International Trade Commission ("Commission"), alleging that the defendants had imported and sold products that infringed on the relevant patent. The *Winbond* defendants argued that the patent was invalid because the patent failed to list an engineer who qualified as a co-inventor. *Winbond*, 262 F.3d at 1368. The administrative law judge ("ALJ") "concluded that an incorrect listing of inventors prevented enforcement" of the patent; the Commission upheld the ALJ's opinion. *Id.*

After the Commission's decision, the patent holder petitioned the United States Patent and Trademark Office ("USPTO") to add the engineer as an inventor on the patent. *Id.* at 1368-69. The petition included a statement from the engineer that: "the standard for inventorship as it relates to the '903 patent has been explained to me. Based on my understanding of that standard, I hereby state that I have made an inventive contribution to the subject matter claimed in the '903 patent, whereby I am a co-inventor of the claimed subject matter of the '903 patent."
*In re Certain Eprom, Eeprom, Flash Memory, and Flash Microcontroller Semiconductor Devices, and Products Containing Same*, USITC Inv. No. 337-TA-395, USITC Pub. No. 3392, 2001 WL 242553, at *9 (Oct. 16, 2000). The petition was granted, and the patent owner sought a rehearing from the Commission on the issue of proper inventorship. *Winbond*, 262 F.3d at 1369. The Commission remanded the case to the ALJ, who ordered the patent holder "to produce attorney-client privileged and work product protected documents concerning the inventors" of the patent. *Id.* On review of this decision, the Commission determined that the

4

patent holder "placed at issue the advice of counsel by its affirmative act of petitioning the

Commission for reconsideration of the inventorship issue based on a certificate of correction . . .

issued by the [US]PTO." *Id.* The Federal Circuit affirmed the Commission's decision on the

issue of waiver.[1]

Dyson argues that, at the time of the *Winbond* decision, a party seeking a correction had

to show that there was no deceptive intent in the original patent prosecution. Demonstrating a

lack of deceptive intent is no longer a requirement. However, the Commission conducted

separate analyses of the issues of deceptive conduct and privilege waiver and did not base the

waiver solely on the alleged deceptive conduct. *See In re Certain Eprom, Eeprom, Flash*

*Memory, and Flash Microcontroller Semiconductor Devices, and Products Containing Same*,

2001 WL 242553, at *14 ("Our decision to find waiver is not based simply on the fact that

Amtel's attorneys explained the inventorship issue to Gupta and Gupta acted upon that

explanation . . . or the fact that inequitable conduct on the part of Amtel was alleged."). As

discussed more fully below, it was the affirmative act of petitioning the Commission for

reconsideration based on the certificate of correction that was the basis of finding waiver.

Dyson correctly states that Federal Circuit law applies to attorney-client privilege in the

area of inventorship. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803–04 (Fed. Cir.

2000). To find waiver of attorney-client privilege, a party has waived the privilege if:

"(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the

asserting party; (2) through this affirmative act, the asserting party put the protected information

---

[1] Only the temporal scope of the waiver was challenged in the Federal Circuit.

at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1579 (Fed. Cir. 1985) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). There must be "a strong showing of need in order to breach the privilege." *Zenith*, 764 F.2d at 1580.

Dyson argues that attorney advice was never placed at issue in this litigation. Dyson claims that they have not relied on declarations to the patent office or privileged communications to support their litigation positions. However, the change in the invention date is clearly material to Dyson's litigation theory. The change of the invention date from 2010 to 2006 comes several years into the current litigation and seemingly negates at least one of Defendants' invalidity defenses. The new invention date also conflicts with previous testimony from the inventors. Dyson further argues that there is no *per se* rule that a change in inventorship negates attorney-client privilege. However, James Dyson testified that the explanation for the change in inventorship was "probably" explained to him by his attorneys before he signed the statement. Grammack and Stickney have also testified that Dyson's attorneys explained to them that Stickney was no longer an inventor. As Magistrate Judge Cox found: "The new priority date alleged by Dyson would make it impossible for Mr. Stickney to have been involved with the conception of the inventions embodied in the '010 and '823 Patents. Therefore, the change in inventorship is directly related to Dyson's relatively new claim that priority date is March 6, 2006, not August 27, 2010." *Dyson, Inc. v. Sharkninja Operating LLC*, No. 1:14-CV-0779, 2016 WL 5404605, at *2 (N.D. Ill. Sept. 28, 2016). Plaintiffs have maintained that

Stickney was an inventor; now they maintain that he is not, an inversion of the situation in *Winbond*. Attorney advice was placed at issue in this litigation.

Courts have followed *Winbond* and found waiver of attorney-client privilege when declarations based on attorney advice were submitted to the USPTO to obtain a certificate of correction. *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006) ("Similar to the patentee in *Winbond*, Stanford relied on its declarations to the PTO to obtain a certificate of correction and is now attempting to use that certificate to enforce the '730 and '705 Patents in the context of its infringement dispute with the Roche defendants."). Here, Plaintiffs relied on attorney advice to obtain a certificate of correction and will claim the earlier priority date in that certificate to enforce the patents in this infringement suit. Defendants have demonstrated a compelling interest to access these communications to properly respond to the earlier priority date now asserted by Plaintiffs.

Magistrate Judge Cox's order was not clearly erroneous or contrary to law.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Objections to Magistrate Judge's September 28, 2016 Order Finding Waiver of Privilege [288] are overruled; and Magistrate Judge Cox's September 28, 2016 Order is affirmed.

Date:     February 2, 2017          /s/ John W. Darrah
JOHN W. DARRAH
United States District Court Judge