# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DYSON, INC. and DYSON TECHNOLOGY LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | 1:14-cv-0779 |
| v. | ) ) ) | Magistrate Judge Susan E. Cox |
| SHARKNINJA OPERATING LLC and SHARKNINJA SALES COMPANY | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

The Court held a discovery conference on January 11, 2017. During that conference, Plaintiff Dyson sought a ruling that documents which defendant SharkNinja shared with its exclusive licensor Omachron Science, Inc. ("Omachron") are not protected by the common interest privilege. The Court ordered briefing on this issue.[1]

The underlying allegations and defenses in this highly contentious patent infringement lawsuit have been discussed in the Court's previous rulings and will not be repeated here. Dyson's chief contention relevant to the instant dispute is that Omachron is not named as a defendant in this lawsuit and, therefore, is not sufficiently allied with SharkNinja in a common legal cause for the common interest privilege to attach. According to Dyson, any verdict in this suit cannot create liability for Omachron and, accordingly, the privilege does not apply to documents counsel shared with Omachron. SharkNinja argues that this position too narrowly construes the common interest privilege. For the reasons stated below, the Court rules that these documents need not be disclosed.

---

[1] The Court also denies Dyson's Motion for Leave to File Surreply. (Dkt. 352, 354.)

The applicable law favors SharkNinja's position and not Dyson's. A "common interest" exception to the general rule that attorney-client communications shared with third parties are not protected by privilege exists when parties undertake a joint effort with respect to a common legal interest. *United States v.BDO Seidman LLP,* 492 F.3d 806, 815 (7th Cir. 2007). Business partners frequently share such common interests and the relationship between a patentee and its exclusive licensee specifically invokes the doctrine. *In re Regents of University of California,* 101 F.3d 1386, 1390 (Fed. Cir. 1996) (applying Seventh Circuit law).

Omachron and SharkNinja have a longstanding agreement in which Omachron has granted SharkNinja an exclusive license for Omachron's patented technology used in SharkNinja's vacuum cleaners, including the accused products here, in exchange for royalty payments to Omachron. Omacharon worked with SharkNinja to develop these products and shared outside counsel for purposes of their collaborations. Lawyers for both companies consulted with each other, their clients, and with outside counsel to discuss the development and protection of Omachron's intellectual property which is used in SharkNinja's products. Although Dyson contends that the licensing agreement was not in existence until after the development of the accused products, SharkNinja demonstrates that the licensing agreement was actually in place throughout the relevant time period via agreements between SharkNinja (then known as Euro-Pro) and holding companies with which Omachron had contracted to house its intellectual property. In 2014, Omachron and SharkNinja signed a formal Joint Defense and Common Interests Agreement which memorialized its asserted common legal interests.

Thus the facts show that since 2009, Omachron has exclusively licensed SharkNinja its inventions and technology and that both parties collaborated extensively on the patented technology. In addition, as a result of SharkNinja's waiver of privilege with respect to its advice

of counsel defense, Dyson is aware of this intense collaboration and the numerous communications between SharkNinja's in-house counsel and outside counsel for Omachron and SharkNinja analyzing the impact of Dyson's patents on SharkNInja's products.  As a result of these disclosures, Dyson is already in possession of documents most relevant to the underlying dispute.  Further, it has been on notice for at least two years that SharkNinja and Omachron had asserted common legal interests, but did not object.[2]  Dyson excuses its failure to do so on the basis that SharkNinja has applied the privilege to many additional documents produced in the later phase of fact discovery, but this won't wash.  The doctrine either applies to the parties' relationship or it does not.  Dyson's failure to object to the asserted privilege tends to show that it recognized that the Omachron-SharkNinja relationship warranted an extension of the privilege to the parties' communications with attorneys advising them on their joint interests.  Otherwise it would have objected earlier.

Moreover, the Court finds no support for Dyson's argument that the two companies must be co-defendants or subject to legal jeopardy in the same case for the common interest doctrine to apply.  The cases cited by defendant are do not hold this.  In *LG Electronics U.S.A. v. Whirlpool Corp.*, 661 F.Supp. 2d 958 (N.D. Ill. 2009), for example, the Court declined to apply the doctrine to Whirlpool's attorneys' communication with its third party advertising agencies based on Whirlpool's contention that these agencies feared being sued as a result of the work they did for Whirlpool.  The court correctly found that such a broad extension of the exception would permit any two companies to argue a common legal interest in any case where they dealt with each other and a lawsuit might result from their business relationship.  The Court noted that

---

[2] The instant dispute seems to have its origin in this Court's Order that SharkNinja produce a large volume of documents responsive to certain search terms which may or may not be relevant to this dispute in an attempt to expedite the discovery process.  The parties then were directed to submit any disputes about relevance to the Court, but this did not occur.  In its response to that Order, SharkNinja produced a large volume of documents and claimed that certain of these documents privileged.

Whirlpool was firmly in control of its agencies and nothing about the relationship demonstrated a joint legal strategy. By contrast, SharkNinja has demonstrated that it collaborated with Omachron on a joint legal strategy throughout their licensing relationship. Neither are the facts of *Verigy US Inc v. Mayder,* No. C07-04330 RMW, 2008 WL 5063873 (N.D. Cal. Nov. 21, 2008) applicable to this case, which involves a longstanding legal and business collaboration between two companies, one of which exclusively licenses its patented technology for the other to use in its products. Accordingly, the Court upholds the privilege asserted by SharkNinja over these communications.

Enter: 3/2/2017

_____
**U.S. Magistrate Judge, Susan E. Cox**