**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DYSON, INC. and DYSON | ) | |
| TECHNOLOGY LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | 1:14-cv-0779 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| SHARKNINJA OPERATING LLC and | ) | |
| SHARKNINJA SALES COMPANY | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The Court held a discovery conference on January 11, 2017.[1] During that conference, Dyson claimed that SharkNinja had over-designated certain communications and documents as privileged. The Court ordered that Dyson select a sample of 5% of the documents and communications listed as privileged on SharkNinja's privilege logs, and that SharkNinja provide those documents for *in camera* inspection. If, after review, the Court believed that there was sufficient over-designation, it would appoint a special master to review all the documents on the privilege logs. On January 20, 2017, Dyson provided the Court with a sample it sought to have this Court review. On February 10, 2017, SharkNinja provided documents from its Second Privilege Log for *in camera* review, but refused to provide documents from its First and Third Privilege Logs; on March 24, 2017, the Court ordered that such documents be produced, and SharkNinja complied with that order. The Court has now reviewed the documents, and orders that certain documents be produced, as described herein. The Court further orders that SharkNinja perform additional review of its Weekly Update emails and to produce those

---

[1] The underlying allegations and defenses in this highly contentious patent infringement lawsuit have been discussed in the Court's previous rulings and will not be repeated here.

documents as discussed below. The Court does not believe that a special master will be necessary in this case.

## I. DISCUSSION

"The essential elements for the creation and application of the attorney-client privilege are well-established: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.'" *Roth v. Aon Corp.*, 254 F.R.D. 538, 540 (N.D. Ill. 2009) (quoting *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). However, copying an attorney on a communication "does not automatically transform the contents of that message into a privileged request for legal advice," and the privilege will only apply where "'the predominant purpose of the communication [was] to render or solicit legal advice.'" *Kleen Prods LLC v. Int'l Paper*, 2014 WL 647558, at *1 (N.D. Ill. Nov. 12, 2014) (quoting *Swift Spindrift, Ltd. v. Alvada Ins.*, Co., No. 09 Civ. 9342(AJN)(FM), 2013 WL 3815970, at *8 (S.D.N.Y. July 24, 2013)) (alteration in original).

### A. First Revised Privilege Log

Dyson identified 8 communications from SharkNinja's First Revised Privilege Log for *in camera* review. The Court has reviewed the sample documents from SharkNinja's privilege log and holds that the following privilege log entries contain or discuss legal advice and were appropriately designated as privileged: 78, 116, 120, 160, and 242. SharkNinja stated that it "previously produced a complete unredacted version of the document duplicatively described at Entry Nos. 169 and 170 on SharkNinja's first privilege log." (Dkt. 359 at 2.) The Court

2

assumes that this means that SharkNinja intends to produce those documents, and hereby orders it to do so.

Log Number 313 does not contain privileged information and should be produced. This document is an email attachment. SharkNinja provided the parent email to which this document was attached to allow the Court to understand the context of the attachment. The Court does not believe that the attachment contains privileged information. The body of the email states that the attachment is a "presentation for a general sketch overview of the various NEW concepts we are pursuing at this time." (EP0155435.) The email copies two attorneys, but does not generally relate to legal issues. There is a section of the email that is appropriately redacted that discusses a review of the designs in the attachment with an attorney (Philip Mendes da Costa), but that is not sufficient to imbue the attachments with the attorney-client privilege. The attachments themselves were not sent for the purpose of seeking legal advice and there is nothing in the attachments that reflects any communications from an attorney. The Court does not believe that this document is privileged and orders that it be produced.

### B. Second Privilege Log

Dyson identified 56 communications from SharkNinja's Second Privilege Log for *in camera* review. The Court has reviewed the sample documents from SharkNinja's privilege log and holds that the following privilege log entries contain or discuss legal advice and were appropriately designated as privileged: 187, 226, 418, 944, 950, 1019, 1020, 1021, 1022, 1121, 1142, 1225, 1241, 1299, 1390, 1400, 1401, 1499, 1609, 3588, 3632, 4039, 4042, 4045, 4047, 4078, and 4079.

Log Entry 22 is not privileged and should be produced. There are no attorneys on this email chain, and the substance of the communication concerns technical testing of a stretch wire

hose. SharkNinja claimed that this document was privileged because it was attached to a communication providing legal advice regarding vacuum design. However, "[a]ttachments which do not, by their content, fall within the realm of privilege cannot become privileged by merely attaching them to a privileged communication with the attorney." *Muro v. Target Corp.*, 2006 WL 3422181, at *5 (N.D. Ill. Nov. 28, 2006).

Log Entry 1592 is not privileged and should be produced in an unredacted version. The section of the email chain that is redacted copies an attorney (Jennifer McCabe), but does not discuss any legal issues. The subject matter being discussed relates to the performance of certain SharkNinja products, and no legal issues are mentioned at all.

Log Entry 1943 is not privileged and should be produced. The document copies an attorney (Jennifer McCabe), but does not discuss any legal issues. It appears to be an email copying a powerpoint document and soliciting review from the Steam Products team, which does not include any attorneys. There are no legal issues mentioned in the body of the email, and McCabe's inclusion on the email does not appear to be for the purpose of soliciting any legal advice.

Log Entry 1953 only contains a small amount of privileged information and should be produced in a redacted version. The document copies an attorney (John Yang), but the primary purpose of the document is to discuss the progress of certain vacuum projects SharkNinja was undertaking. There is one paragraph in the April 26, 2012 email from Wayne Conrad that begins "we are getting our details together[;]" this paragraph is relaying legal advice and may be redacted. The remainder of the email must be produced.

Log Entry 2480 is not privileged and should be produced in an unredacted version. The section of the email chain that is redacted copies an attorney (Jennifer McCabe), but does not

4

discuss any legal issues. The email seeks "initial reactions" for what appears to be a thirty second video (likely an advertisement), but it does not request legal advice from McCabe or discuss any legal issues. The main purpose of the email appears to be marketing SharkNinja products.

Log Entry 3541 is not privileged and should be produced. The document copies an attorney (Jennifer McCabe), but does not discuss any legal issues. The purpose of this email is to discuss a plan for evaluating certain SharkNinja products, but the evaluation appears to be of a performance nature and does not give any indication that there are any legal issues tangential to this evaluation. There are no legal issues mentioned in the body of the email, and McCabe's inclusion on the email does not appear to be for the purpose of soliciting any legal advice.

The remainder of the documents reviewed by this Court belongs to the same genus of documents. Each of these documents contains the subject line "Weekly Update" and provides a progress report on various SharkNinja projects. Some of these documents were produced in redacted form (*e.g.*, Log Entry 849), and others were withheld in their entirety (*e.g.*, Log Entry 1414). Dyson was alerted to the fact that these documents may have been over-designated as privileged when it discovered that a version of the May 4, 2012 Weekly Update had been produced with one small redaction, but other versions of this email chain were withheld entirely. (See Dkt. 328 at 4-5). SharkNinja has asserted privilege over these documents primarily because McCabe and Yang are copied on them. The Court has reviewed these documents and believes that they do contain some privileged information, but that the majority of these communications does not contain privileged discussions. As such, the Court orders that SharkNinja to produce these documents with the redactions outlined herein.

Log Entry 849 includes the Weekly Update for June 1, 2012. The following portions of that email may be redacted. Under the Omachron Development Projects heading the second sentence of the first bullet point may be redacted because it discusses a review undertaken by SharkNinja lawyers. Under the Air Purification heading, the third bullet point that begins "IP" may be redacted as it contains privileged information. The fifth bullet point that begins "Updated" may be redacted because it includes a discussion of legal advice from McCabe. Under the Floor Care Cleaning Products heading, within the bullet point labeled StainLifter Device (Group 4), the fourth sentence beginning with "[a]greed to continue" may be redacted.

Log Entry 849 also includes the Weekly Update for May 11, 2012. Under Omachron Development Updates, the first bullet point may be redacted because it discusses a review undertaken by SharkNinja lawyers. Under the Air Purification heading, the first bullet point may be redacted because it discusses legal advice relating to an agreement with a third party.

Log Entry 860 includes the Weekly Update for March 9, 2012. Under the Total Emissions heading, the fifth bullet point beginning "[t]esting to support" may be redacted, as it concerns testing of certain claims of SharkNinja products in conjunction with counsel. Under the Air Purification heading, the fifth bullet point may be redacted because it discusses intellectual property issues that contain legal advice.

Log Entry 860 also includes the Weekly Update for March 2, 2012. Under the Omachron Development Projects heading, the penultimate bullet point may be redacted because it seeks legal advice regarding intellectual property issues. Under the Air Purification heading, the last sentence of the second bullet point may be redacted because it discusses actions to be taken by SharkNinja's attorneys relating to intellectual property issues. The third action item in the final bullet point under this heading may also be redacted for this reason.

Log Entry 887 includes the Weekly Update for March 16, 2012. Under the Total Emissions Testing heading, the fifth bullet point beginning "[t]esting to support" may be redacted, as it concerns testing of certain claims of SharkNinja products in conjunction with counsel. Under the Air Purification heading, the third and fourth bullet points may be redacted because they discuss legal advice relating to an agreement with a third party and intellectual property issues that contain legal advice. Log Entry 887 also includes the Weekly Update for March 9, 2012, which may be redacted as detailed above.

Log Entry 888 includes the Weekly Updates for March 9 and 16, 2012, which may be redacted as described above.

Log Entry 942 includes the Weekly Update for April 9, 2012. Under the Air Purification heading, the Court believes that the fourth through seventh bullet points contain or relay legal advice on issues related to intellectual property and agreements with third parties and may be redacted. Under the Floor Care Cleaning Product heading, the fifth bullet point may be redacted as it discusses legal issues related to a contract with a third party supplier.

Log Entry 942 also includes the Weekly Update for March 30, 2012. Under the Air Purification Heading, the sixth through eighth bullet points may be redacted because they contain or relay legal advice on issues related to intellectual property and agreements with third parties. Under the Floor Care Cleaning Products heading, the second bullet point may be redacted as it discusses legal issues related to a contract with a third party supplier.

Log Entry 943 includes the Weekly Updates for March 30 and April 9, 2012, which may be redacted as described above.

Log Entry 961 includes two slightly different versions of the Weekly Update for May 11, 2012. The first version ("May 11 First Version") begins at 4230219.00001. Under the

Omachron Concept Development Projects heading, the sentence in the first bullet point beginning "John Yang" may be redacted. Under the Air Purification heading, the first bullet point may be redacted as it discusses communications from McCabe on a draft agreement with a third party. Under the Floor Care Cleaning Products heading, the bullet point beginning "[r]eceived feedback" may be redacted because it contains legal advice regarding a draft agreement with a third party. The second version ("May 11 Second Version") of this Weekly Update begins at 42302196.00005. Under the Air Purification Heading, the first bullet point may be redacted as it discusses legal issues relating to a draft agreement with a third party.

Log Entry 965 and Log Entry 969 include both versions of the Weekly Update for May 11, 2012, which may be redacted as described above.

Log Entry 1027 includes the May 11 Second Version, which may be redacted as described above. Log Entry 1027 also includes the Weekly Update for May 4, 2012. This is the same Weekly Update that SharkNinja has already produced with one redaction. The Court believes that this redaction is appropriate, and SharkNinja has agreed to produce this document with the same redactions. (Dkt. 328 at 10).

Log Entry 1078 includes the Weekly Update for May 4, 2012, which may be redacted as described above.

Log Entry 1094, Log Entry 1098, and Log Entry 1099 include the May 11 Second Version and the Weekly Update for May 4, 2012, which may be redacted as described above.

Log Entry 1383 includes the Weekly Update for February 24, 2012. Under the Omachron Development Projects heading, the last sentence of the penultimate bullet point may be redacted. Under the Air Purification heading, the fourth bullet point may be redacted because it discusses legal advice relating to draft agreements with third parties. Under that heading, the

8

bullet point beginning "[w]e also reviewed" may be redacted as it discusses legal advice being solicited on intellectual property matters.

Log Entry 1383 also includes the Weekly Update for February 17, 2012. Under the Air Purification heading, both the first and penultimate bullet points may be redacted, as they discuss legal advice pertaining to draft agreements and intellectual property issues.

Log Entry 1414, Log Entry 1426, Log Entry 1427, and Log Entry 1445 all include the Weekly Update for May 4, 2012, which may be redacted as described above.

Log Entry 1699 includes the Weekly Update for June 29, 2012. Under the heading Omachron Product Development Support, the second bullet point may be redacted. This bullet point discusses actions taken by SharkNinja engineers in attempts to comply with intellectual property advice from SharkNinja lawyers. Under the Floor Cleaning Products heading and the Spot Cleaner subheading, the third bullet point may be redacted as it discusses legal advice relating to label designs.

Log Entry 1851 includes the Weekly Update for September 18, 2012. Under the Sonic-Duo Chemical heading and the All-Purpose Floor Cleaner subheading, the first bullet point may be redacted as it discusses legal advice regarding certain test protocols.

Log Entry 3582 includes the Weekly Update for September 10, 2012. Under the Sonic-Duo Chemical heading and the All-Purpose Floor Cleaner subheading, the first bullet point may be redacted as it discusses legal advice regarding certain test protocols.

Log Entry 3769 includes the Weekly Update for August 10, 2012. The Court cannot identify any privileged information in this document and orders that it be produced in unredacted form.

### C. Third Privilege Log

Dyson identified 1 communication from SharkNinja's Third Privilege Log for *in camera* review. The Court has reviewed the sample document from SharkNinja's privilege log and holds that the document contains or discusses legal advice and was appropriately designated as privileged.

### D. Special Master

The Court does not believe that a special master is necessary in this case. Having reviewed the sample documents, the Court does not believe that there has been a systemic problem with over-designating documents and communications as privileged, with the exception of the Weekly Updates. Although there certainly were instances where SharkNinja improperly claimed privilege, it appears to the Court that this is simply the type of human error that will necessarily occur when a large document review and production is undertaken. The issue of attorney-client privilege is discretionary, and reasonable minds may disagree over what is or is not deserving of the privilege. In any given privilege log there will likely be several documents that have been inappropriately withheld, and this log appears to be no different to the Court. As such, the Court does not believe a special master is necessary.[2]

However, the Court orders SharkNinja to undertake additional review of all Weekly Updates it has withheld and produce those documents with more targeted redactions that mirror what the Court has allowed in this order. The Weekly Updates were regularly redacted too aggressively or improperly withheld. From the Court's review, this problem does indeed appear

---

[2] Even if this Court were inclined to find that there was a larger issue with SharkNinja's privilege log, most of the problems were isolated to SharkNinja's Second Privilege. The Second Privilege Log contains 4,186 entries, as compared to 341 entries in the First Revised Privilege Log and 195 entries in the Third Privilege Log. As discussed below, the Second Privilege Log was made without regard to relevance. As such, the vast majority of a Special Master review would be consumed by reviewing documents which may or may not be relevant in the first place. The Court believes that the burden of such a review would likely outweigh its benefit, but does not reach that issue here. *See* Fed. R. Civ. P. 26(b)(1).

to be a systematic over-designation of the Weekly Updates based on attorneys being copied on the email. Therefore, the Court orders SharkNinja to review all Weekly Updates that it withheld and/or redacted to ensure that they have been appropriately withheld and/or redacted. SharkNinja must engage in this review and produce all documents related to it on or before April 17, 2017.

### E. Relevance

According to SharkNinja, the documents listed on the Second Privilege Log include documents that are not responsive to Dyson's document requests or relevant to the case at all. These documents were produced pursuant to this Court's order of October 5, 2016 (Dkt. 284), wherein the Court ordered SharkNinja to provide all the documents collected pursuant to certain search terms to Dyson under Attorneys' Eyes only protection, without regard for the relevance or responsiveness of those documents; the parties were then to review those documents for relevance and meet and confer regarding the return of irrelevant and non-responsive documents. (Dkt. 284.) In their subsequent joint letter to the Court, the parties did not identify any issues relating to the responsiveness review and/or return of non-relevant documents, and the Court assumes – with some trepidation, given the history of this case – that the parties were able to successfully accomplish the exchange of documents. (*See* Dkt. 311.)

The Court recognizes that many of the emails at issue in this opinion may not contain relevant information, as most of them were included on the Second Privilege Log pursuant to this Court's October 5, 2016 order. In its review of the documents, it appeared to the Court that many of the documents concerned issues that were not relevant to this case. However, the Court was only tasked with reviewing these documents for privilege, not relevance. In fact, it would be difficult for this Court to make findings regarding relevance without much more context,

considering the technical jargon, abbreviations, and references used in the communications between and among SharkNinja employees. The Court believes that the method previously employed would be the most efficient way to deal with this issue. As such, SharkNinja is ordered to produce all of the documents from the Second Privilege Log that this Court has found are not protected by the attorney-client privilege on or before April 17, 2017. As discussed above, SharkNinja must produce all improperly withheld Weekly Updates at this time as well. Both sets of documents will be produced under Attorneys' Eyes Only protection, and may only be viewed by outside counsel for Dyson. Dyson will then have until April 21, 2017 to review those documents. All documents that do not contain relevant information must be returned to SharkNinja on April 24, 2017, and Dyson must destroy any copies it made of such documents; Dyson must certify that is has taken these steps to SharkNinja on April 24, 2017. If there is a disagreement relating to the relevance of certain documents, the parties must meet and confer on that issue, and alert the Court to any impasse no later than April 28, 2017. The Court urges the parties to resolve any such issues on their own, as the scope of relevance is fairly well defined at this stage of the litigation, and both parties should be fully aware of the contours of that definition.

Enter: 4/5/2017

_____

U.S. Magistrate Judge, Susan E. Cox

12